UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

FILED
MAY 3 0 2006
NANCY MAYER WHITTINGTON, CLERK
U.S. DISTRICT COURT

Marvin E. Green
PSC 808 Box 15
FPO AE 09618
011-39(335)773-9719
marvin.green@eu.dodea.edu
Pro Se ~~In Forma Pauperis~~

VS.    CIVIL A

CASE NUMBER  1:06CV01008

JUDGE: Reggie B. Walton

DECK TYPE: Administrative Agency Review

DATE STAMP: 5/30/2006

DoD Dependents Schools - Europe
Maxwell Selz
Unit 29649, Box 7000
APO AE 09096
011-49(613)460-4775
maxwell.selz@eu.dodea.edu

## COMPLAINT

MEMORANDUM OF POINTS AND AUTHORITIES IN OPPOSITION TO THE DOD DEPENDENT SCHOOLS – EUROPE DIVISION'S EXECUTION OF THE INTERAGENCY "PRIORITY PLACEMENT PROGRAM"
http://dayton.cpms.osd.mil/public/manindex.cfm

### I. INTRODUCTION

Plaintiff, Marvin E. Green, submits this memorandum in opposition to the Department of Defense Dependent Schools-Europe's (DoDDS-E) ongoing execution of the Priority Placement Program (PPP).

### II. STATEMENT OF FACTS

On Monday the 6th of March 2006 the Plaintiff, Marvin Green, attended an optional PPP briefing conducted by Yolanda Quezada, Lead Personnel Management Specialist, of the DoDDS-E, Personnel Division. The final PowerPoint™ slide included the statement

1

that "All communication must be between the 2 personnel offices." At the conclusion of the briefing the Plaintiff's options were to register for the PPP immediately or be terminated at the completion of his current overseas tour ending August 31, 2006.

On Wednesday the 8th of March 2006 Plaintiff, Marvin Green, attended a mandatory resume vetting. Lenny Dobson, GM14 and IT Division Chief, and David Harrison, IT Systems Administration Branch Chief (and Plaintiff's supervisor), were the two other participants. Upon questioning Mr. Dobson regarding PPP options Mr. Dobson indicated that in ongoing monitoring of personnelist it had been found that they "are not doing their jobs [in their execution of the PPP program]". Mr. Dobson made the statement that: "they are getting multiple hits [from the Automated Stopper & Referral System, in the form of incoming e-mails] that are expiring without being acted upon".

Mr. Dobson at no time indicated an extra-departmental mandate for the surveillance activities. Plaintiff's supervisor, David Harrison, made no comments relating to electronic surveillance of HRO personnel's computers or their e-mails. David Harrison, as Systems Administration Branch Chief has ultimate access and permissions authority for the IT infrastructure of DoDDS-E.

Mr. Dobson was not offered a renewal in the overseas area, and in May 2006 will be placed as a Network Engineer in the Atlanta area. Plaintiff's supervisor David Harrison was invited to extend his current overseas tour by one year. Plaintiff was invited to tender a written request for a 1 year tour extension on the basis of Plaintiff's dependent having one additional school year to complete High School. Plaintiff declined to make the request with the statement that: "If you wish to renew me in the overseas area - I seek renewal on the basis of my performance reviews, my demonstrated enthusiasm for the job

and my ability to get along with co-workers in a team environment. I am not seeking renewal on the basis of my wife's ethnicity or any medical condition [my son has]."

On Thursday, the 9th of March 2006, Plaintiff attended a mandatory PPP registration appointment with HRO representative Cindy Conway. Plaintiff discussed and found common ground in areas of: European experiences and remote spousal relationships. Ms. Conway recommended registering for excepted service; relating her spouses' career satisfaction. Plaintiff agreed to amend PPP registration in 90 days to include excepted service availability. Plaintiff informed Ms Conway of the imminent completion of a security clearance investigation being conducted by the State Department, along with a possible job offer. Plaintiff expressed to Ms Conway a preference for jobs requiring a security clearance with one of the Military Services, with the highest preference for "any Air Force Base, anywhere in the country". Plaintiff made known to Yolanda Quezada, Ms. Conway, and previously to Personnelist Denise Riker, that Plaintiff would be forced to pay $18,700 for Plaintiff's dependent's High School Senior year tuition - if Plaintiff were not working for DoD outside of the continental United States on the first day of school in August of 2006. At the conclusion of the appointment with HRO representative Cindy Conway, Plaintiff felt confident that HRO would do their best for the Plaintiff while acting within the rules of the PPP program.

A year ago, on March 21, 2005 Plaintiff's supervisor, David Harrison, elected to continue a discriminatory reporting practice against the plaintiff - which was initiated by a previous supervisor. On June 27, 2005 Plaintiff's supervisor preliminarily rated Plaintiff as needing improvement, whereas: "Mr. Green been slow to comply with time reporting. He refused to request PCS orders for approximately 6 months [Plaintiff

MARVIN GREEN v. DODDS – E
Opposition to agency execution of PPP program

continues to dispute Plaintiffs' obligations in the absence of Plaintiff's mobility agreement], finally submitting the request when his and his family's ID cards expired. Letters of reprimand, and suspension without pay were issued to employee. He is currently turning in his timesheet on time and has requested PCS orders."

## III. ARGUMENT

I(a) The PPP Manual is dated July 1998- At that time, undetected remote surveillance of another's E-Mail was just then becoming possible, however, the possibility is not addressed in the PPP manual.

I(b) The PPP Manual is dated July 1998 – At that time the undetected remote surveillance of HRO personnel's Personal Computers was not yet possible and the possibility is not addressed in the PPP manual.

I(c) The PPP Operations Manual states on page 3-18 (M) Contact with Gaining Activity: "All communications between activities regarding PPP registrants must be kept within HRO-to-HRO channels".

I(d) The PPP Operations Manual states on page 4-12 (Ch4, Sec. D, No1(c)) Unauthorized Contact: "No one representing the gaining activity may contact a registrant without CARE Program Coordinator approval. If a registrant [Plaintiff or Plaintiff's supervisor, presuming to act on plaintiff's behalf] initiates contact with the gaining activity [reads e-mail 'hits' from gaining activity], the person contacted should refer the registrant to the restriction in Chapter 3, Section M, and then immediately report the contact to the gaining HRO. The HRO must then inform the CARE Program Coordinator."

MARVIN GREEN v. DODDS – E
Opposition to agency execution of PPP program

Plaintiff asserts that Supervisor Harrison's, monitoring of, ordering another to monitor and/or knowledge of the results of monitoring; are proscribed by the afore mentioned regulations and by the intent and spirit of the PPP program (where it has as yet failed to take into account the possibility of surreptitious electronic monitoring).

II(a) The PPP Operations Manual states on page 4-16 (Ch4, Sec. D, No. 9(b)) Invalid Offers, (b): "An offer determined by the registering activity to constitute an unreasonable difference in working conditions or conditions of employment [can be challenged by the Plaintiff's HRO representative]".

II(b) The PPP Operations Manual states on page 4-14 (Ch4, Sec. D, No. (6)) Order of Offers, (b): "Activities may continue to work through resumes on hand before working new referrals regardless of the priority of the new referrals. Conversely, activities may elect to work the new resumes provided they observe priority order and have not already initiated contact with a registering HRO regarding one of the resumes on hand."

The two aforementioned regulations allows Plaintiff's HRO representative latitude in the case of multiple hits (from the Automated Stopper & Referral System, in the form of incoming e-mails) as Plaintiff's HRO representative may be "work[ing] through resumes on hand before working on [Plaintiff's]…". The opinion that "[HRO representatives] are not doing their jobs" expressed by Mr. Dobson and unchallenged by Plaintiff's supervisor, David Harrison, results in harm to HRO representative Conway and Plaintiff, when communicated to DoDDS-E HRO Chief Dr. Gloria Gladden and/or DoDDS-E Director Dr. Diane Ohman. Acceptance of the opinion that "[HRO representatives] are not doing their jobs" by any person above the organizational level of

HRO representative Conway will forever cast doubt upon the efficacy and result in the application of the PPP program upon the Plaintiff.

III(a) The PPP Operations Manual states on page 4-12 (Ch4, Sec. D, No. 2) Job Requirements: "…Regardless of the grade of the position, both registering and gaining activities should consult with subject matter experts for assistance in resolving qualifications issues."

The leading subject matter expert for the Plaintiff is Plaintiff's supervisor, David Harrison. Plaintiff's supervisor, David Harrison, is of the opinion that: "Mr. Green been slow to comply with time reporting. …[and] Letters of reprimand, and suspension without pay were issued to employee."

Plaintiff asserts that supervisor David Harrison's opinions and participation in the PPP program are deleterious toward both Plaintiff and HRO representative Cindy Conway; such that the Plaintiff's participation in the PPP program is irrevocably compromised.

IV(a) The PPP Operations Manual states on page 4-17 (Ch4, Sec. D, No. 9(h)) Invalid Offers: "An offer of a position that requires the employee to sign a mobility agreement, unless already on a mobility agreement."

Plaintiff has twice directed requests to HRO Chief Dr. Gloria Gladden for a copy of Plaintiff's Mobility Agreement. Neither request elicited any response. Plaintiff believes he was recruited from a contractor position in the OCONUS area and may, or may not, have signed a mobility agreement.

_____ MARVIN GREEN v. DODDS – E
Opposition to agency execution of PPP program

Plaintiff asserts that without certain knowledge as to whether Plaintiff is on a mobility agreement or not; that Plaintiff will be unable to assess whether a job offer requiring a mobility agreement is refusable as an Invalid Offer.

## IV. CONCLUSION

Plaintiff's participation in PPP is ongoing; harm done to Plaintiff or Plaintiff's HRO representative (and by extension, Plaintiff - through modified execution of the PPP program upon Plaintiff) is indeterminable without an investigation and adjudication as to the legality and/or propriety of surreptitious intra-departmental surveillance.

Plaintiff requests Defendant be compelled to produce Plaintiff's mobility agreement.

Plaintiff requests CARE Program Coordinator, Dayton be notified along with the presumptive mandate to: (a) Investigate Plaintiff's complaint to determine harm done to Plaintiff, Plaintiff's HRO representative and the PPP program by Defendant. (b) Update the PPP regulations (manual) to take into account the possibility of surreptitious surveillance and the resultant potential for harm to the PPP program and its participants. (c) Prevent further harm to Plaintiff in regards to the execution of the PPP program.

Dated: March 28, 2006
Format updated: April 6, 2006

By _____
Marvin E. Green
PSC 808 Box 15
FPO AE 09618
011-39(335)773-9719
marvin.green@eu.dodea.edu
Pro Se